UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Circuit Connect, Inc.</u>,
       Plaintiff

       v.                                       Case No. 10-cv-514-SM
                                                Opinion No. 2011 DNH 130
<u>Preferred Transport
& Distribution, Inc. and
Mecca, LLC</u>,
       Defendant
_____

<u>Mecca, LLC</u>
       Third Party Plaintiff

       v.

<u>Advanced Circuitry International
and Two Brothers Trucking, Inc.</u>
       Third Party Defendants

## <u>O R D E R</u>

Plaintiff, Circuit Connect, Inc., a New Hampshire corporation, brought this suit against Mecca, LLC, and Preferred Transport and Distribution, Inc., claiming that the x-ray system it purchased from Mecca arrived at Circuit Connect's offices in damaged condition.  Mecca has named Advanced Circuitry, International ("ACI") and Two Brothers Trucking, Inc. as third-party defendants.  Mecca alleges that Two Brothers was negligent in hiring Preferred Transport to ship the machine and that Advanced Circuitry- from whom Mecca bought the machine immediately prior to re-selling it to Circuit Connect-

negligently loaded the machine onto Preferred Transport's truck. ACI's motion to dismiss Mecca's claim against it for lack of personal jurisdiction (doc. no. 22) is now before the court.

## Background

The relevant jurisdictional facts are straightforward.  ACI is a Georgia corporation having its principal place of business in Georgia.  It does not sell any products in New Hampshire, has no customers in New Hampshire, and does not do any direct advertising in New Hampshire.  Mecca, an Illinois corporation having its principal place of business in Illinois, brokers the sale of electronic equipment, or sometimes, purchases equipment for resale.  It operates a website which lists equipment for sale.  In 2009, an ACI representative requested that Mecca assist ACI in selling an x-ray system owned by ACI.  Mecca thereafter advertised ACI's x-ray machine on its website.  There is no evidence that ACI contracted for, paid for, or otherwise controlled the advertising, or that Mecca was acting as a broker for ACI.

At some point after Mecca listed the machine on its website, a Circuit Connect representative contacted Mecca and expressed interest in buying it.  Mecca, in turn, contacted ACI to obtain additional information about the machine.  The three parties,

ACI, Mecca, and Circuit Connect, eventually held a telephone conference call to discuss the machine. A Circuit Connect representative later viewed the machine at ACI's warehouse in Georgia.

Circuit Connect agreed to purchase the machine from Mecca and Mecca agreed to buy the machine from ACI. Mecca took ownership of the machine from ACI on November 5, 2009, and resold the machine to Circuit Connect on November 6. Under an agreement with Mecca, Two Brothers (through subcontractor Preferred Transport) shipped the machine on November 6 from ACI's warehouse in Georgia to Circuit Connect in New Hampshire. Under its separate agreement with Mecca, ACI loaded the machine, which then belonged to Mecca, onto Preferred's truck. ACI billed Mecca, not Circuit Connect, for its loading services.[1] Given the bill of lading presented to ACI on November 6, ACI knew that the machine was headed for New Hampshire. When the machine arrived in New

---

[1] Mecca has not made a prima facie showing that ACI's loading agreement was with Circuit Connect. Although Mecca's Martin Lieberman states that ACI charged Circuit Connect $250 for loading the system onto the truck (doc. no. 23-3, ¶ 11), the invoice attached to Mr. Lieberman's own affidavit contradicts his averment; it shows that ACI charged Mecca $250 for that service (doc. no. 23-4). See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001)(only "properly supported proffers of evidence" are accepted as true in a prima facie inquiry into personal jurisdiction)(emphasis added).

Hampshire it was allegedly in damaged condition.


## Discussion

Mecca bears the burden of establishing that the court has personal jurisdiction over Advanced Circuitry.  See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  Because the court is proceeding based upon the written submissions of the parties, and without an evidentiary hearing, Mecca need only make a prima facie showing that jurisdiction exists.  See id. at 1386 & n.1.

To establish specific personal jurisdiction over a non-resident defendant, Mecca must show: (1) its claim against Advanced Circuitry directly arises out of, or relates to, Advanced Circuitry's New Hampshire activities; (2) Advanced Circuitry's forum contacts represent a purposeful availment of the privilege of conducting activities here, and (3) the exercise of jurisdiction here is reasonable, in light of the "gestalt factors."  United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).

1. <u>ACI's New Hampshire Contacts</u>

The jurisdictional inquiry begins by identifying the alleged contacts. <u>Swiss Am. Bank</u>, 274 F.3d at 621. Here, ACI's telephone conversation with a Circuit Connect representative located in New Hampshire is a contact with this state. <u>See</u> <u>Int'l Paper Box Mach. Co., Inc. v. Paperboard U.S. Indus. Inc.</u>, Case No. Civ. 99-184-JD, 2000 WL 1480462, at *3 (D.N.H. Feb. 8, 2000)("[C]ommunications to the forum state by telephone calls, letters, and other means may constitute sufficient contacts to confer jurisdiction"). No other activities Mecca has identified, however, constitute forum contacts by ACI.

For example, ACI's "soliciting [of] Mecca's services in selling the x-ray system through [Mecca's] website (accessible anywhere, including New Hampshire)" is not a contact by ACI with New Hampshire. That "commercial activity conducted over the Internet," <u>ICP Solar Tech., Inc. v. TAB Consulting, Inc.</u>, 413 F. Supp. 2d 12, 18 (D.N.H. 2006)(McAuliffe, J.), was Mecca's, not ACI's. Mecca owned and operated the website, and there is no evidence that ACI and Mecca were anything but "separate entit[ies]." <u>Cf.</u> <u>Knights Armament Co. v. Optical Sys. Tech., Inc.</u>, Case No. 6:07-cv-1323-Orl-22KRS, 2008 WL 2157108, at *6 (M.D. Fla. May 21, 2008)(for purposes of personal jurisdiction,

parent company and subsidiary were separate entities, even though subsidiary's products appeared on parent company's website).

Also failing to qualify as New Hampshire contacts are the following activities identified by Mecca: ACI's "transferring of the x-ray system to Mecca" in Georgia "in order to find a buyer"; ACI's "agreeing to load the sophisticated machinery for transport [by others] to New Hampshire"; and Circuit Connect's "inspection [of] the x-ray system at ACI's Georgia facility." Document No. 23-1, pg. 9-10. None of these activities amount to ACI contacts with New Hampshire, because all occurred in Georgia and/or involved ACI's agreements with Mecca, not Circuit Connect. Finally, ACI's "benefitting from the ultimate sale of the x-ray system to a New Hampshire company," (doc. no. 23-1, pg. 9), does not rise to the level of a forum contact.[2]

---

[2] Mecca invites the court to view ACI's contacts through the lens of the stream-of-commerce theory of personal jurisdiction. See Document 23-1, pg.13. Accordingly, it stresses the fact that ACI benefitted from the "ultimate" sale of the machine to a New Hampshire company and that ACI at some point prior to shipment knew the machine was headed for New Hampshire. See generally Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987). This is not, however, a stream-of-commerce case, but rather, a negligent loading case. Accordingly, the public policies implicated in product liability cases are not implicated here. Moreover, even if the court were to apply the stream-of-commerce analysis, Mecca has only shown that ACI, at sometime prior to loading the machine onto the truck for shipment by others, knew that the machine was headed for New Hampshire. Mecca has not shown that ACI otherwise "targeted the forum." J. McIntyre Mach., Ltd. v. Nicastro, 131 S.Ct. 2780, 2788 (2011)(plurality decision)(finding no personal jurisdiction in New Jersey over foreign defendant that did not target the state).

2. <u>Relatedness</u>

To meet the first prong, relatedness, Mecca must establish a causal connection between Advanced Circuitry's New Hampshire contact (<u>i.e.</u>, its telephone conversation with a Circuit Connect representative) and its alleged negligent loading of the machine. The level of causation required lies "between a 'but for' and a strict proximate cause test," <u>GT Solar Inc. v. Goi</u>, Case No. 08-cv-249-JL, 2009 WL 3417587, at *12, n.29 (D.N.H. Oct. 16, 2009), although the "proximate cause" standard will apply in most cases. <u>See</u> <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 61 (1st Cir. 2005). Regardless, however, of the precise degree of legal causation required in any particular case, the touchstone of the inquiry is whether the contact "form[s] an important, or [at least] material, element of proof in the plaintiff's case." <u>Id.</u> at 61 (quotation omitted) (alteration in original).

ACI's telephone conversation with a Circuit Connect representative in New Hampshire was not related in any way to Mecca's negligent loading claim against Advanced Circuitry. That contact forms no, let alone an "important," element of proof that Advanced Circuitry negligently loaded the machine onto the truck after title passed to Mecca. To the extent that the telephone call might be viewed as one part of a larger causal chain that

ultimately led to ACI's loading of the machine for Mecca, that connection is too "attenuated and indirect" for purposes of the relatedness requirement.  <u>Harlow</u>, 432 F.3d at 61 (quotation omitted).

Because Mecca has failed to make a prima facie showing on the relatedness prong, the remaining prongs of the three-part test need not be addressed.  However, is it worth noting that in the absence of additional, and more substantial, contacts by ACI with New Hampshire, it would be difficult to find that ACI purposefully availed itself of the protections and benefits of this state.  <u>See</u> <u>PMH Research Assoc., LLC v. Life Extension Found. Buyer's Club, Inc.</u>, Case No. 04-251-PB, 2004 WL 2958671, at *7 (D.N.H. Dec. 22, 2004)(finding no purposeful availment because defendant had "few contacts with the state, and next-to-none that can be appropriately attributed to the cause of action at issue.").  And, even if it is assumed that ACI's loading of the truck, with knowledge that it was headed for New Hampshire, constituted a contact with New Hampshire, that contact would not be enough to establish purposeful availment.  While ACI's knowledge might be relevant had Mecca alleged intentionally tortious conduct by ACI, the claim against ACI is for "mere untargeted negligence."  <u>Calder v. Jones</u>, 465 U.S. 783, 789 (1984)(defendant, whose knowing and intentional conduct in one

forum causes injurious effects in another, may be subject to personal jurisdiction). Moreover, ACI's loading agreement was with Mecca-- an Illinois corporation-- not Circuit Connect. And Mecca, not ACI, directed where the machine was to be shipped. ACI could not, therefore, reasonably anticipate being haled into court in New Hampshire.

## Conclusion

For these reasons, Advanced Circuitry's motion to dismiss Mecca's third-party complaint (document no. 22) is granted.

**SO ORDERED.**

                                                     Steven J. McAuliffe
                                                     Chief Judge

cc:   Elizabeth Maher Leonard, Esq.
       Wesley S. Shused, Esq.
       Mary K. Ganz, Esq.
       Donald L. Smith, Esq.
       Derek D. Lick, Esq.